FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 NOV 28  PM 4: 12

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

ESTHER CARNEY

VERSUS

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION

CIVIL ACTION

NO. 05-374

SECTION "K" (2)

## FINDINGS AND RECOMMENDATION

Plaintiff, Esther Carney, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for widow's

insurance benefits ("WIB") under Title II of the Act,  42 U.S.C. § 402(e), and

supplemental security income benefits ("SSI") under Title XVI of the Act, 42 U.S.C. §

1381 et seq. This matter was referred to a United States Magistrate Judge pursuant to 28

U.S.C. § 636(b) and Local Rule 73.2E(B).

___ Fee_____
___ Process_____
X  Dktd._____
√  CtRmDep_____
___ Doc. No _____

As ordered, plaintiff filed a memorandum of facts and law.  Record Doc. No. 9.

Defendant filed a timely reply memorandum of facts and law.  Record Doc. No. 10.

1.     PROCEDURAL HISTORY

Carney filed her applications for SSI and WIB on May 15, 2003, alleging

disability since June 2000 based on several conditions and on the account of her late

husband, Willie D. Carney, who died in February 2001.  After her applications were

denied, Carney requested a hearing before an administrative law judge ("ALJ"), and the

hearing was held on May 24, 2004.  On August 13, 2004, the ALJ denied plaintiff's

applications.  (Admin. Record at 13-27).  After the Appeals Council denied review on

December 30, 2004 (Admin. Record at 5-8), the ALJ's decision became the final decision

of the Commissioner for purposes of this court's review.

2.     STATEMENT OF THE ISSUE ON APPEAL

Plaintiff contends that the ALJ made the following error:

a.     The ALJ erred in failing to find that plaintiff's severe impairments
       prevented her from performing substantial gainful activity.

3.     ALJ'S FINDINGS RELEVANT TO ISSUE ON APPEAL

The ALJ made the following relevant findings:

i.     Claimant's alleged onset date is June 11, 2000. Ms. Carney's period
       during which she must establish disability for purposes of Disabled

2

Widow's Insurance Benefits begins with February 10, 2001 and ends on February 10, 2008.

ii.   Claimant has not engaged in substantial gainful activity since her alleged onset date of June 11, 2000.

iii.  The medical record presents evidence of hypertension and lumbar spine pain which are severe conditions . . . . Anemia, diverticular disease, Grade I esophagitis, erosive gastritis, duodenitis and anxiety/depression are non-severe conditions. Chronic obstructive pulmonary disease is not a medically determinable condition.

iv.   Claimant's conditions singly nor in combination, neither meet nor equal the criteria for any impairment set forth in 20 CFR, Appendix 1, Subpart P Regulations No. 4. Specifically, Listings 1.04 Disorders of the spine and 4.03 Hypertensive cardiovascular disease are not met.

v.    Claimant's assertions relative to symptomology, pain, functional limitations and restrictions on activities of daily living are exaggerated, are found to lack corroboration and substantiation in the medical evidence, and are not credited.

vi.   Claimant retains the following functional capacity: At the time that Ms. Carney initially asserts disability she is closely approaching advanced age and is currently advanced age with a greater than high school education. Ms. Carney can lift/carry up to twenty-five pounds frequently and fifty pounds occasionally. Ms. Carney can push/pull twenty-five pounds. Ms. Carney can sit, stand and or walk each for at least six hours out of an eight hour day. Ms. Carney can occasionally engage in climbing, kneeling, stooping, crouching and crawling activities.

vii.  Claimant is fifty-six years of age with a greater than high school education as she attended a technical/vocational institute where she

3

received certification as a nursing assistant and has past relevant work as a nursing assistant.

viii.   Claimant's restrictions do not prevent her from performing her past relevant work of nursing assistant. . . .

ix.   Claimant is further capable of performing work activity of a lighter nature, which I deem existing in significant numbers throughout the national and statewide economies.

x.   The claimant has not been under a "disability" as defined in the Social Security Act at any time through the date of this decision.

(Admin. Record at 26)(citations omitted).

4.   <u>ANALYSIS</u>

a.   <u>Standards of Review</u>

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. <u>Waters v. Barnhart</u>, 276 F.3d 716, 716 (5th Cir. 2002); <u>Loza v. Apfel</u>, 219 F.3d 378, 389 (5th Cir. 2000); <u>Spellman v. Shalala</u>, 1 F.3d 357, 360 (5th Cir. 1993). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971); <u>Loza</u>, 219 F.3d at 393; <u>Spellman</u>, 1 F.3d at 360. This court may not "reweigh the

4

evidence in the record, try the issues <u>de novo</u> or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." <u>Newton v. Apfel</u>, 209 F.3d 448, 452 (5th Cir. 2000). The Commissioner, rather than the courts, must resolve conflicts in the evidence. <u>Id.</u>

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible. <u>See</u> <u>Arkansas v. Oklahoma</u>, 503 U.S. 91 (1992). Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it. <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1022 (5th Cir. 1990); <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. <u>Newton</u>, 209 F.3d at 452; <u>Martinez v. Chater</u>, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI, plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining

disability.  20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2002).  The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity.  Id. §§ 404.1520, 416.920; Waters, 276 F.3d at 716; Loza, 219 F.3d at 393.[1]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995).

The claimant has the burden of proof under the first four parts of the inquiry.

Newton, 209 F.3d at 453.  If she successfully carries this burden, the burden shifts to the

---

[1]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  Id. §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  Id. §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is not disabled.  Id. §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  Id. §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  Id. § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 (1994) ("Medical-Vocational Guidelines").

6

Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing. When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding. Id.

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174.

    b.    Factual Background

Plaintiff testified that she was 56 years old on the date of the hearing and had completed a few years of college. (Admin. Record at 186-87). She stated that she had worked as a nurse's assistant at Charity Hospital from 1999 "up to 2001 or 2002," and that she had worked as a substitute teacher in the 1970s or 1980s and as a receptionist in the late 1970s. She testified that she had back surgery at Charity Hospital in 2003. (Admin. Record at 187).

Carney stated that she usually wakes up in the morning between 6:30 and 7:00 a.m. and that she usually goes to bed at night between 9:00 and 10:00 p.m., but that she does not sleep through the night. She stated that she is "a walking drug store" and that

she takes medication for hypertension, her heart and cholesterol, along with "pain pills." (Admin. Record at 188).

Plaintiff described herself as 5'6" tall and weighing about 145-150 pounds, although she said her normal weight should be about 185 pounds. (Admin. Record at 188). She said she had weighed approximately 250 pounds about a year before the hearing, that her weight "kept going back and forth" during that period, and that she started losing weight again a couple of months before the hearing. (Admin. Record at 188-89). Carney testified that she underwent tests as a result of her weight fluctuations and that her doctor was checking to "see if I was a diabetic," but she had not yet heard the results. (Admin. Record at 189).

Plaintiff testified that she can walk about half a block, but then becomes out of breath, dizzy and weak. She stated that she can stand for about 15 or 20 minutes and lift five or ten pounds, and that she can sit for only 20 or 30 minutes. (Admin. Record at 189).

Carney testified that after she gets up in the morning, she eats breakfast and watches television for a while, then goes back to sleep, wakes up for lunch, takes medicine, watches more television, then goes back to sleep again. She said that sometimes she takes a walk in the evening and tries to walk for more than half a block.

She said she spends most of her day "laying down" because when she sits up for too long, "I fall back, and then the next thing I know, I'm asleep." Plaintiff testified that sitting causes pain in her legs and knees. She stated that she falls two or three times a week and that she sometimes forgets things. She described her energy level as "very low." (Admin. Record at 190).

Carney testified that she can no longer do puzzles because her arms get tired, that she has a poor appetite and that she is no longer able to drive because she takes a lot of medicine and is afraid to drive on the interstate highway. She said, "I don't trust myself driving, with all the meds I have to take, because sometimes I get weak and dizzy when I take them so I don't get behind the wheel and hurt myself or hurt somebody else." (Admin. Record at 191). Plaintiff stated that she no longer socializes and only sometimes goes to church "[b]ecause I don't be feeling good." (Admin. Record at 191-92). She said she has "more bad days than good days" and that on a bad day "I just lay around, don't do nothing." (Admin. Record at 192).

Plaintiff testified that she sees several doctors at different clinics. She identified "Dr. Sapatar" (phonetically spelled in transcript, apparently Dr. Socrates Zapata) as her "neurology doctor," whom she said she had seen two or three times in the preceding

9

year, the last time being a couple of months before the hearing. (Admin. Record at 192-93).

    c.    <u>Vocational Expert Testimony</u>

A vocational rehabilitation counselor, Patricia Ehlinger, testified that plaintiff's prior work as a certified nursing assistant is classified as medium semi-skilled work and that plaintiff's records also indicated other work as a laborer, receptionist, substitute teacher and admit clerk. (Admin. Record at 193). The ALJ proposed a hypothetical of a person who is of advanced age, with a high school education, some college, restricted to a medium residual functional capacity of lifting 25 pounds frequently, 50 pounds occasionally, being on one's feet two-thirds of a day in a 40-hour week, with occasional climbing, kneeling, stooping, crouching and crawling, and asked the expert if she could return to the past work described by the expert with that kind of profile. (Admin. Record at 193-94). Ehlinger testified that such a person could work as a certified nursing assistant.

On cross-examination by plaintiff's attorney, Ehlinger was asked to add additional limitations, including standing less than one, walking less than one, and sitting less than two hours, lifting only occasionally 20 - 10 pounds, frequently less than 10, and then to opine whether that person could return to past relevant work. Ehlinger said she could

not and that there would be no other work she could do.  Plaintiff's attorney then posed

another hypothetical of a person who "could occasionally lift 20, frequently lift 10, stand

and/or walk about six in an eight hour day, sit about six in an eight hour day," and asked

if she could then return to her past relevant work.  Ehlinger said no, but that she would

be able to work in the sedentary to light category. (Admin. Record at 194).

      d.    <u>Medical Evidence</u>

I have reviewed the medical records in evidence and the ALJ'S summary of the

medical evidence.  (Tr. 20-23; 79-172).  I find the ALJ'S summary of the medical

evidence substantially correct and incorporate it herein by reference, with the highlights

noted below.

      e.    <u>Plaintiff's Appeal</u>

The ALJ found that Carney's medical records present evidence of hypertension

and lumbar spine pain that are severe conditions within the constraints of <u>Stone v.</u>

<u>Heckler</u>, 752 F.2d 1099 (5th Cir. 1985), but that anemia, diverticular disease, Grade I

esophagitis, erosive gastritis, duodenitis and anxiety/depression are non-severe

conditions and that chronic obstructive pulmonary disease is not a medically

determinable condition. The ALJ found that plaintiff's "conditions singly <u>nor in</u>

<u>combination,</u> neither meet nor equal the criteria for any impairment," and that her

11

assertions concerning her symptoms, pain, functional limitations and restrictions of daily activities are exaggerated, uncorroborated and "not credited." The ALJ further found that Carney retains the residual functional capacity to perform "work activity of a lighter nature, which activity exists in significant numbers in the state and national economies" and that her restrictions do not prevent her from performing her past relevant work as a nursing assistant. He found that Carney has not been under a "disability" as defined in Social Security law at any time relevant to this decision.

In this appeal, Carney argues that the ALJ erroneously concluded that plaintiff was capable of performing medium work activity and returning to work as a nursing assistant because he failed to consider the combined effect of her impairments and their impact on her residual functional capacity and instead separately evaluated them. She further argues that the ALJ'S findings are contradicted by the assessment of Dr. Zapata, "one of the plaintiff's examining physicians," who "clearly would limit the plaintiff to sedentary activity at most." Record Doc. No. 9 at p. 7.

The ALJ assigned no weight to the perfunctory opinions and conclusions of Dr. Zapata expressed as checkmarks written on a Physical Capacity Evaluation form dated February 2002 (Admin. Record at 24, 171). The ALJ noted that Dr. Zapata filled out the form by checking off boxes indicating that Carney can stand or walk less than one hour

in an eight-hour work day; sit less than two hours; lift/carry less than ten pounds occasionally and/or frequently; use her hands for simple grasping and handling and fine manipulation and fingering, but not pushing and pulling; use her feet for repetitive movements as in operating foot controls; crawl frequently; kneel, squat and climb stairs occasionally; never bend or climb ladders, but able to reach above shoulder level. Dr. Zapata's form contains only checkmarks, with no comments or narrative remarks of any kind. (Admin. Record at 171-72).

The ALJ did not accord weight to Dr. Zapata's conclusions checkmarked on this form concerning plaintiff's limitations because the doctor had filled out the form after seeing plaintiff only once, and then only at the request at her representative "in efforts to assist his patient with acquiring financial assistance" and because they were inconsistent with other medical evidence of record, including objective diagnostic evidence. The ALJ accurately summarized the conflicting objective evidence from neurological examinations on May 15 and September 17, 2001, indicating that plaintiff's cranial nerves II-XII were functioning properly, her upper and lower extremities strength and reflexes were in tact with no signs of atrophy, and she voiced no complaints of spinal or knee pain. (Admin. Record at 24, 113, 118). The ALJ also correctly noted Dr.

Zapata's failure to refer to x-rays of plaintiff's spine or knees or to conduct any range of motion exercises.

Carney's contention that the ALJ erred because he did not accord weight to the opinion of Dr. Zapata, whom her brief characterizes as "one of the plaintiff's examining physicians at MCLNO" (Medical Center of Louisiana at New Orleans). Record Doc. No. 9 at p. 7, is not grounds for reversal. First, as the ALJ correctly intimated, Dr. Zapata does not appear to be a "treating physician" as defined in the applicable law, 20 C.F.R. §§ 404.1502, 416.902, because the record establishes no ongoing relationship characterized by frequency of contact with Carney sufficient to characterize him as a treating source. Second, even if Dr. Zapata could somehow be considered a treating physician, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight [only] if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence." Newton, 209 F.3d at 455 (emphasis added).

> The ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion. The treating physician's opinions are not conclusive. The opinions may be assigned little or no weight when good cause is shown. Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.

Id. at 455-56 (emphasis added).

The ALJ in the instant case was entitled to give no weight to Dr. Zapata's opinions expressed in his checkmarked, form report, given the substantial evidence to the contrary in the record and the inadequacies of Dr. Zapata's assessments. The ALJ determined that Dr. Zapata's opinions on the February 2002 form were against the weight of the objective medical evidence, which indicated that Carney's limitations were not so severe. Specifically, the various medical records and reports of objective testing (all of which are adequately and accurately summarized in the ALJ'S opinion), are consistent with each other that plaintiff suffered only moderate symptoms and limitations, and are substantial evidence that support the ALJ'S decision not to accord controlling weight to Dr. Zapata's opinions on the physical capacity evaluation form. The ALJ adequately explained his reasons for rejecting Dr. Zapata's severity opinion in the face of substantial conflicting evidence.

In addition, contrary to plaintiff's argument, the ALJ considered plaintiff's mental and physical limitations in combination when he assessed plaintiff's residual functional capacity. An individual's combined impairments can prohibit substantial gainful activity. 20 C.F.R. §§ 404.1523, 416.923; Owens v. Heckler, 770 F.2d 1276, 1282 (5th Cir. 1985). It is well settled that "the ALJ must analyze both the disabling effect of each of

15

the claimant's ailments and the combined effect of all of these impairments." <u>Fraga v.</u> <u>Bowen</u>, 810 F.2d 1296, 1305 (5th Cir. 1987)(quotations omitted).  However, an ALJ'S finding that multiple impairments do not render the claimant disabled will be upheld unless the ALJ "so fragmentized [plaintiff's] several ailments . . . that he failed properly to evaluate their effect in combination upon this claimant." <u>Id.</u> (quotation omitted).

In the instant case, no such fragmentation of analysis occurred.  My review of the record as a whole convinces me that the ALJ did "not simply [make] a rote statement" that he had evaluated plaintiff's impairments in combination. <u>Id.</u>; <u>accord</u> <u>Tamez v.</u> <u>Sullivan</u>, 888 F.2d 334, 336 (5th Cir. 1989). The ALJ evaluated the medical evidence carefully. For example, in addition to the findings concerning  Carney's various other conditions reflected in the medical records discussed in the ALJ'S opinion and above, the ALJ correctly found no specialized care for depression/anxiety reflected in the medical records and "absent or minimal symptoms of depression" that were no more than expectable reactions to psychological stressors." (Admin. Record at 20). Here, "there simply was no evidence that [plaintiff] suffered from any mental or emotional impairment, . . ." <u>Fraga</u>, 810 F.2d at 1305. "In the absence of a medically determinable mental impairment, the Secretary is not required to consider the effects of such an

impairment on the claimant's work capacity." <u>Harrell v. Bowen</u>, 862 F.2d 471, 482 (5th Cir. 1988).

In addition, the ALJ accurately summarized the medical records concerning Carney's physical impairments and incorporated the appropriate limitations in his residual functional capacity opinion.  The ALJ specifically noted that his residual functional capacity opinion incorporated plaintiff's age; education; lifting, sitting, standing and walking limitations. Substantial evidence supports the ALJ'S findings that Carney's conditions, either singly or in combination, neither meet nor equal any listed disability and that she retains sufficient residual capacity to return to her past relevant work.

Apart from Dr. Zapata's discredited conclusions, plaintiff's own testimony appears to be the principal basis for her appeal. The ALJ found that plaintiff's assertions concerning her symptomology, pain, functional limitations and restrictions on daily activities were not credible. The ALJ has the responsibility to evaluate the credibility of witnesses, <u>Masterson v. Barnhart</u>, 309 F.3d 267, 272 (5th Cir. 2002), and his evaluation is entitled to considerable deference by this court. <u>Falco v. Shalala</u>, 27 F.3d 160, 164 & n.18 (5th Cir. 1994); <u>Carrier v. Sullivan</u>, 944 243, 247 (5th Cir. 1991). The ALJ'S explanation of his reasons for finding plaintiff not entirely credible is all that is required.

17

<u>Falco</u>, 27 F.3d at 163-64; <u>Godbolt v. Apfel</u>, Bo. 98-1680, 1999 WL 179476, at *9 (E.D.

La. Mar. 31, 1999)(Vance, J.); <u>accord</u> <u>James J. Flanagan Stevedores, Inc. v. Gallagher</u>,

219 F.3d 426, 430 & n.8 (5th Cir. 2000)(citing <u>Falco</u>, 27 F.3d at 164). In this case, the

ALJ adequately explained his assessment of plaintiff's credibility by detailing the lack

of corroboration and substantiation of her assertions in the medical records and objective

testing.

CONCLUSION

Substantial evidence in the record supports the ALJ'S findings concerning

plaintiff's conditions and residual functional capacity.

**RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be

DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions,

and recommendations in a magistrate judge's report and recommendation within ten (10)

days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

18

notice that such consequences will result from a failure to object.  <u>Douglass v. United</u>

<u>Servs. Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _28th_ day of November, 2005.


JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

19